### In re GREGORY et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1909.)

No. 75.

BANKRUPTCY (§ 143*)—ASSETS—STOCK EXCHANGE SEAT—PROCEEDS OF CLOSED TRADE.

Where, on the bankruptcy of a member of a stock exchange, his seat is sold and his transactions on the floor closed out under its rules, the proceeds of both pass to the member's trustee in bankruptcy, subject, however, to the rules of the Exchange that they should be appropriated, first, to the payment of the member's indebtedness to the exchange, second, to claims arising against him out of the transactions on the floor of the exchange, and, third, loans from members, as against his general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 202; Dec. Dig. § 143.*]

Petition to Review Order of the District Court of the United States for the Southern District of New York.

In the matter of Howard Gregory, and others, individually, etc., bankrupts. Petition of the Consolidated Stock Exchange of New York to revise an order of the District Court confirming an order of the referee in bankruptcy directing petitioner, its agents, etc., to pay over to the trustees certain moneys held by the chairman of petitioner's clearing committee. Reversed.

Sullivan & Cromwell (Royall Victor and George H. Stover, of counsel), for petitioner.

Robert G. Perry, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. One of the bankrupts was a member of the Consolidated Stock Exchange of New York, under whose rules, because of his insolvency, his seat was sold for $850 and certain of his stock transactions on the floor of the Exchange were closed out at a profit of $315.48. These sums by the rules of the Exchange are to be appropriated to the payment of his indebtedness as a member of the Exchange in the following order: Indebtedness to the Exchange, $134.50; claims arising against him out of transactions on the floor of the Exchange, $511.86; loan from a member of the Exchange, $2,000. The trustee admits that under the case of Hyde v. Woods, 94 U. S. 523, 24 L. Ed. 264, the proceeds of the seat cannot be reached by him, but he claims the moneys in the hands of the chairman of the clearing committee resulting from the closing out of the bankrupt's floor transactions. The District Judge, without expressing any opinion himself, has so ordered in deference to the decision of the state court in Cohen v. Budd, 52 Misc. Rep. 217, 103 N. Y. Supp. 45, affirmed 117 App. Div. 922, 102 N. Y. Supp. 1133.

The rationale of the decision in Hyde v. Woods, supra, is that the purchase of a seat—that is, of a license to do business as a member of an Exchange—is subject to the rules of the Exchange; e. g., that in case of the purchaser's insolvency its proceeds should be first applied to the payment of his Exchange creditors, to the exclusion of his creditors outside of the Exchange. This is a quality which always inheres to his seat or license, though it passes as his property under the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

If the exercise of this license, viz., the purchase and sale of stocks from and to members of the Exchange, resembles the ownership of the license, then the profits on stock transactions should also pass to the trustee, subject to the rules of the Exchange. We see no such difference between the seat and profits from stock transactions as to require a different disposition of the latter from the former. Doubtless they both pass to the trustee in bankruptcy under section 70 (5) of the act, because the bankrupt could have transferred them. But he could not have transferred them, nor could they have been reached by execution, except subject to the claims of creditor members of the Exchange.

In Ex parte Saffery, 4 Ch. Div. 555 (1876), the Court of Appeals ordered the official assignees of the London Stock Exchange to pay

over to the trustee in bankruptcy £5,000 which the bankrupt had paid them out of his general estate for the purpose of settling with his Stock Exchange creditors. James, L. J., speaking for the court, held that this act of the bankrupt was a cessio bonorum in fraud of the act, because it was a voluntary assignment of a part of the bankrupt's general estate for the benefit of a special class of creditors, as distinguished from his creditors generally. The decision was affirmed in the House of Lords. Tomkins v. Saffery, 3 App. Cas. 213 (1877).

On the other hand, in Ex parte Grant, L. R. 13 Chan. Div. 667 (1880), the Court of Appeals refused to order the official assignees of the same Exchange, in whose hands were certain credits like. those under consideration, to pay them over to the trustee in bankruptcy of the member. James, L. J., who had previously delivered the opinion of the court in Ex parte Saffery, thought the official assignees held these credits in their own right, and that the trustee's action, if, any, must be against the persons who had paid the money to them. Baggally and Cotton, L. JJ., thought the moneys in the hands of the official assignees were not assets of the bankrupt at all, but an artificial fund created by virtue of certain rules of the Exchange. These two decisions seem to us entirely consistent, and they must have been intended by James, L. J., who decided them both in the Court of Appeals, to be consistent. The transfer in the first case was held invalid because it was a voluntary act of the bankrupt, whereas the credits in the second case were held to be properly applied by the officers of the Exchange in accordance with the rules of the Exchange, of which he was a member when the credits accrued. Whether the reasons given in Ex parte Grant are clear and satisfactory, or not, the decision rests fundamentally on the ground that the rules of the Stock Exchange are valid and not in fraud of the bankrupt act.

We think the reasoning of the Supreme Court in Hyde v. Woods, supra, and Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318, as to a seat in such an Exchange, more satisfactory, and that it applies equally to credits accruing from transactions of the bankrupt on the floor of the Exchange closed out under the rule. If the rules take the estate of the Exchange member out of the bankruptcy act. as the court held in the case of Cohen v. Budd, supra, they are clearly invalid; but in our opinion they do not. They simply pass with the estate of the bankrupt for administration under that act.

As it is manifest that nothing will be left under the rules in this case to go to the trustee, the order is reversed.